FILED
U.S. DISTRICT COURT

2009 MAR 30 P 3: 48

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

**Aaron S. Bartholomew (10042)**
BARTHOLOMEW, SILVA & ASSOC.
Attorneys at Law, P.C.
1145 South 800 East, Suite 127
Orem, Utah 84097
Tel: (801) 371-0200
Fax: (801) 377-0373

**Neil Skousen (10064)**
Attorney at Law
P.O. Box 1771
Orem, Utah 84059-1771
Tel: (801) 376-6666
Fax: (801) 225-4006
Email: ndskousen@aol.com

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KANDI CARLISLE,**<br>**fka Kandi Apple Revere,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**MCDONALD'S CORPORATION,**<br>a foreign corporation,<br>**MCDONALD'S USA, LLC,** a foreign<br>limited liability company,<br>**MAC MANAGEMENT, INC.,**<br>a Utah corporation,<br>**TREVOR ROBERTS,** an individual,<br>**FLORENCIO ALDINO,** an individual, and<br>**FELIPE SANCHES,** an individual.<br><br>**Defendants.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case: 2:09cv00278<br>Assigned To : Wells, Brooke C.<br>Assign. Date : 3/30/2009<br>Description: Carlisle v McDonalds, et al<br><br><br>**JUDGE** |

## NATURE OF THE CASE

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq., and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex/gender, race, national origin, and retaliation by the above-captioned corporate Defendants, by and through its agents, and to provide appropriate relief to Kandi Carlisle, Plaintiff, *formerly known as* Kandi Apple Revere (hereinafter "Carlisle"), who was adversely affected by such practices. In addition, this is a tort action under the laws of the State of Utah against all Defendants for sexual assault, battery, assault, intentional infliction of emotional distress, and negligent supervision of Defendant's employees.

Plaintiff further alleges that corporate Defendants, McDonald's Corporation, McDonald's USA, LLC (collectively hereinafter "McDonald's") and Mac Management, Inc. (hereinafter "Mac Management"), by and through its agents, discriminated against Plaintiff, failed to properly supervise and train its employees to prevent Plaintiff from being sexually assaulted, battered, and sexually harassed by her co-workers and supervisors while on duty at work.

Plaintiff alleges that the corporate Defendants' agents assigned her less desirable working conditions and benefits based upon her race and national origin compared to the Hispanic employees who were given more favorable working conditions and benefits.

Plaintiff alleges that the corporate Defendant's agents discriminated against Plaintiff by failing to properly investigate and resolve Plaintiff's multiple complaints to management about the above incidents. Plaintiff alleges that the corporate Defendants, by and through its agents,

2

ridiculed and dismissed Plaintiff's complaints about the above incidents, and as a result of the hostile work environment that was created and maintained by Defendants, the corporate Defendants constructively discharged Plaintiff in retaliation for her complaints about unlawful discrimination, assault, and battery.

Finally, Plaintiff alleges that Defendants are liable under State tort claims of assault, battery, intentional infliction of emotional distress, and negligent supervision of Defendants' employees, the doctrine of *respondeat superior* applying to all applicable causes of action against Defendants.

## JURISDICTION AND VENUE

1. Each and every allegation of this Complaint that is not inconsistent with this section, Jurisdiction and Venue, is incorporated herein by reference.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices and State tort claims alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

## PARTIES

4. Each and every allegation of this Complaint that is not inconsistent with this section, Parties, is incorporated herein by reference.

3

5. Plaintiff, Kandi Carlisle, Provo, Utah 84606, is the alleged aggrieved party and is therefore authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

6. At all relevant times, Defendant Employers, McDonald's Corporation is an Illinois Corporation, registered in Utah as a foreign corporation, and McDonald's USA LLC is an Illinois Limited Liability Company, registered in Utah as a foreign LLC, and Mac Management, Inc., is a Utah Corporation, having multiple places of business in the State of Utah, has continuously been doing business in the State of Utah, and has continuously had at least fifteen (15) employees.   Defendants McDonald's Corporation, McDonald's USA LLC, and Mac Management, Inc., are hereinafter referred to as the "Corporate Defendants."

7. At all relevant times, Defendant Trevor Roberts, a Utah resident, owned and operated Mac Management, Inc., and had direct or indirect authority over Mac Management and the other individually named defendants.

8. At all relevant times, Defendant Florencio Aldino, a Utah resident, was an employee of McDonald's Corporation, McDonald's USA LLC, and Mac Management, Inc.

9. At all relevant times, Defendant Felipe Sanches, a Utah resident, was an employee of McDonald's Corporation, McDonald's USA LLC, and Mac Management, Inc.

## STATEMENT OF FACTS

10. Each and every allegation of this Complaint that is not inconsistent with this section, Parties, is incorporated herein by reference.

11. On or about 28 September 2007, Mrs. Carlisle was hired and employed by the Corporate Defendants and Defendant Trevor Roberts.

12. Mrs. Carlisle was initially hired as a "crew person" to work in the McDonald's restaurant located at 9346 South 700 East, Sandy, Utah.

13. In or about January 2008, as a result of her superior performance, Mrs. Carlisle was promoted by Defendant Trevor Roberts to the position of "shift manager" to work at that same McDonald's location. Mrs. Carlisle worked as a shift manager trainee from that time until her constructive termination from Defendants' employment in April 2008.

14. Since September 2007 upon Mrs. Carlisle's employment by Defendants, she was treated differently due to her race and national origin in that:

    a. Defendants' employee managers of Hispanic descent routinely permitted subordinate Hispanic employees to take excessive rest breaks and otherwise not perform their duties as employees while "on the clock."

    b. Caucasian Americans were not allowed those same privileges and benefits and were told specifically to continue working while the Hispanic employees on the same shift would be allowed to rest, take breaks, etc.

    c. Defendants' employee managers of Hispanic descent routinely permitted subordinate Hispanic employees to take time off work without proper notice in advance of their shifts, a benefit and privilege regularly denied the Caucasian employees.

    d.  This pattern continued during the whole of the course of Mrs. Carlisle's employment by Defendants. Defendants did nothing change or otherwise remedy this unfair situation.

15. Beginning in or about March 2008, Defendant Felipe Sanches, a Hispanic male employee from Mexico, while working for Defendants as a cook at the same McDonald's location as Mrs. Carlisle, repeatedly followed Mrs. Carlisle to secluded locations at the restaurant, like the women's bathroom, downstairs storage location, etc., and grabbed and touched Mrs. Carlisle's breasts and buttocks. Defendant Sanches also threatened to kiss Mrs. Carlisle without her consent and told her that he wanted to have sex with her. This he did without Mrs. Carlisle's consent and Mrs. Carlisle told Defendant Sanches not to touch her and his actions were unwanted. Mrs. Carlisle asked two co-workers to follow and watch her to prevent Defendant Sanches from sexually harassing her while at work.

16. When Defendant Sanches continued these unwanted advances and actions, Mrs. Carlisle reported Defendant Sanches' conduct to Samantha Clark who was employed by Defendants as the assistant manager of the McDonald's location in which she worked.

17. Having been duly notified, upon information and belief, Defendants and their agents did not take appropriate action to prevent Defendant Sanches' continued sexual advances and harassment of Mrs. Carlisle.

18. Defendant Sanches' unwanted sexual advances and harassment continued against Mrs. Carlisle until her employment with Corporate Defendants and Defendant Trevor Roberts was terminated.

6

19. On or about 24 April 2008, during the shift she was working at McDonald's, as she was exiting the women's restroom, Defendant Florencio Aldino, also employed by Defendants at that McDonald's location, suddenly assaulted Mrs. Carlisle and violently and forcefully grabbed her around the waist and back, groping and rubbing her back, breasts, and buttocks.

20. Mrs. Carlisle yelled "No, no!" and attempted to fight Defendant Aldino off of her, struggling to remove herself from his grasp.

21. While he continued to assault Mrs. Carlisle, Defendant Aldino repeatedly called her, "Mia Amor, Mia Amor!" (Spanish for "My Love, My Love!")

22. Pulling out of his hold on her, Defendant Aldino violently grabbed Mrs. Carlisle's arm, severely injuring her arm and shoulder, and continued to grope and sexually assault her while attempting to pull her into the men's restroom.

23. Mrs. Carlisle finally broke free from Defendant Aldio's grip and immediately went and told her manager Samantha Clark what had happened and also called the store manager, Ron Grimstad on the telephone and told him what had happened.

24. This assault was witnessed, in part, by Jeff Talbot, a co-worker at that McDonald's location. Later that night, Mr. Talbot was told by the manager Samantha Clark that Mrs. Carlisle needed "to let it go," meaning to brush aside the sexual assault. (See Mr. Talbot's witness statement, attached hereto as Exhibit A.)

25. Defendant Aldino admitted to the substance of Mrs. Carlisle's allegations about the assault to McDonald's manager Ron Grimstad and Sergio Lopez, another manager. (See

Messrs. Grimstad's and Lopez' statements attached hereto as Exhibits B and C respectively).

26. With the Corporate Defendants' and Defendant Trevor Roberts' knowledge, Mrs. Carlisle's coworkers continued to harass and disparage her due to her claims and allegations against the Defendants.

27. Defendants and their agents, including, but not limited to, Samantha Clark and Defendant Trevor Roberts actively attempted to dissuade and discourage Mrs. Carlisle from pursing her allegations and claims with the proper authorities.

28. Given the unequivocal admissions of wrongdoing by Defendant Aldino, Corporate Defendants' investigation into Defendant Aldino's assault on Mrs. Carlisle substantively corroborates Mrs. Carlisle's version of those events. However, in a clear effort to minimize their liability, Defendants largely white-washed those findings, calling Mrs. Carlisle a liar, calling into question Mr. Talbot's witness statement, and otherwise casting doubt upon the facts surrounding the assault, despite the overwhelming evidence to the contrary.

29. Instead of terminating or transferring Mr. Aldino, Defendants conspired to transfer Ms. Carlisle to another McDonald's location as a punishment her for raising the allegations against Defendants.

30. Corporate Defendant and Defendant Trevor Roberts continued to employ the perpetrator of the sexual assault, Florencio Aldino, and push Mrs. Carlisle out the door for raising these allegations against Defendants.

31. Defendant Mr. Aldino was terminated from Corporate Defendants' employ several weeks later for another separate incident of assault while on the job.

32. As a result of the hostile work environment created by the Defendants collectively, Mrs. Carlisle was traumatized by these events and rightfully felt that she needed to remove herself from the situation, and thereby was constructively discharged from her employment by the Corporate Defendants on 6 May 2008.

33. As a consequence of Defendants' conduct, Mrs. Carlisle suffered severe physical, emotional and mental trauma, requiring medical treatment, including surgery, and ongoing counseling.

34. Mrs. Carlisle has already explored and exhausted her administrative remedies prior to filing this complaint, including in proceedings with the Utah Department of Labor and the Equal Employment Opportunity Commission (EEOC). The EEOC has issued a Notice of Right to Sue, dated 30 December 2008, attached hereto as Exhibit D.

35. Additionally, Mrs. Carlisle prevailed on these allegations before the Department of Workforce Services.

36. Defendants, however, have been absolutely unwilling to attempt to resolve Mrs. Carlisle's claims in any reasonable manner.

## FIRST CAUSE OF ACTION
### Unlawful Sexual Harassment and Hostile Work Environment

37. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

38. Defendants, individually and collectively, and their agents permitted or created unwelcome verbal and physical conduct based upon Plaintiff's gender in the workplace.

39. Defendants' and their agents' conduct created a hostile work environment which was severe and pervasive.

40. When put on notice of Plaintiff's allegations of sexual harassment, Defendants did not properly take steps to protect Plaintiff and otherwise meet their legal obligations to remedy the situation.

41. Defendants and their agents' conduct resulted in the illegal and unlawful constructive discharge of Plaintiff from employment.

42. By virtue of Defendants' creation of a hostile work environment and unlawful harassment of Plaintiff, Plaintiff has been damaged and is entitled to compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

## SECOND CAUSE OF ACTION
### Unlawful Termination – Retaliation and Constructive Discharge

43. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

44. In reporting the unwelcome advances, assaults committed upon her, and discriminatory conduct of her co-workers and supervisors, Plaintiff engaged in a protected activity.

45. Defendants were aware that Plaintiff was engaged in those protected activities.

46. By subsequent action and inaction on the part of the Defendants, Plaintiff was constructively discharged by Defendants for unlawful purposes and motives.

10

47. Defendants intentionally created a hostile work environment in retaliation for Plaintiff's good faith allegations of discrimination and sexual harassment, thereby constructively discharging Plaintiff.

48. Due to Defendants' constructive discharge of Plaintiff, Plaintiff has been damaged and is entitled to back-pay, front-pay, compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

## THIRD CAUSE OF ACTION
### Unlawful Employment Discrimination based upon Race and National Origin

49. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Defendants, collectively and individually, and their agents created and permitted workplace practices which favored Hispanic employees over Caucasian employees, tangibly benefitting the Hispanic employees with more break and rest time, and denying the same to the Caucasian employees.

51. Plaintiff is a Caucasian employee who worked under these conditions and was directly affected by these adverse, unfair and illegal working conditions.

52. Defendants' illegal discrimination against Plaintiff based upon her race and national origin has caused Plaintiff damage, and she is entitled to compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

//

//

11

## FOURTH CAUSE OF ACTION
### Sexual Battery

53. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Defendants Aldino and Sanches physically accosted and sexually assaulted Plaintiff during working hours and while "on the clock" in the employ of Corporate Defendants and Defendant Trevor Roberts.

55. Defendants Aldino and Sanches' conduct was intentional, willful and malicious.

56. The Defendants' abhorrent conduct was unwanted, unwelcome, repulsive to Plaintiff, and had no place in an employment environment.

57. The Defendants conduct caused Plaintiff severe physical, emotional, and psychological trauma and distress.

58. As a direct and proximate result of Defendants' misconduct and injuries that were inflicted upon Plaintiff, Plaintiff's medical doctors have performed extensive medical procedures and surgery on her shoulder and arm.

59. As a victim of battery, Plaintiff is entitled to compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

60. Corporate Defendants and Defendant Trevor Roberts are liable for their employees' sexual battery of Plaintiff under the doctrine of *respondeat superior*.

//

//

12

## FIFTH CAUSE OF ACTION
### Assault

61. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

62. Defendants Aldino and Sanches acted with intent to cause harmful and offensive contact with Plaintiff during working hours and while "on the clock" in the employ of Corporate Defendants and Defendant Trevor Roberts.

63. Defendants Aldino and Sanches conduct was intentional, willful and malicious.

64. The conduct of Defendants Aldino and Sanches caused Plaintiff to be afraid and apprehensive of ongoing assaults and offensive contact.

65. The Defendants' abhorrent conduct was unwanted, unwelcome, repulsive to Plaintiff, and had no place in an employment environment.

66. The Defendants conduct caused Plaintiff severe emotional and psychological trauma and distress.

67. Corporate Defendants and Defendant Trevor Roberts are liable for their employees' assault of Plaintiff under the doctrine of *respondeat superior.*

68. As a victim of assault, Plaintiff is entitled to compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

69. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Defendants' actions, individually and collectively, as described herein were intentional and treated Plaintiff with callousness and recklessness.

71. Defendants' conduct, individually and collectively, as described herein was extreme and outrageous.

72. Defendants' conduct is the primary and proximate cause of Plaintiff's extreme emotional and psychological distress.

73. Plaintiff has suffered and continues to suffer severe emotional distress as a result of Defendants' conduct.

74. Corporate Defendants and Defendant Trevor Roberts are liable for their employees' intentional infliction of emotional distress of Plaintiff under the doctrine of *respondeat superior.*

75. As a result of the intentional infliction of emotional distress, Plaintiff is entitled to compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

## SEVENTH CAUSE OF ACTION
### Negligent Supervision of Employees

76. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Corporate Defendants and Defendant Trevor Roberts had an ongoing duty to Plaintiff to properly train and supervise her co-workers, and to duly and responsibly investigate allegations of employee misconduct when they arose.

14

78. Corporate Defendants and Defendant Trevor Roberts failed in that duty and did not properly train, supervise or conduct investigations.

79. The breach of Corporate Defendants' and Defendant Trevor Roberts' duty proximately caused the assaults, harassment, and discrimination Plaintiff fell victim to while in their employ.

80. Plaintiff has been injured and suffers substantial physical, emotional, and psychological trauma and distress as a direct cause of Corporate Defendants' and Defendant Trevor Roberts' breach of their duty to Plaintiff.

81. As a direct and proximate cause of Defendants' negligent supervision of their employees, Plaintiff should be awarded compensatory, exemplary and punitive damages in the amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

82. On the First Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

83. On the Second Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

84. On the Third Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

85. On the Fourth Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

86. On the Fifth Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

87. On the Sixth Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

88. On the Seventh Cause of Action, for compensatory, exemplary and punitive damages in the amount to be determined at the time of trial.

89. For pre- and post-judgment interest pursuant to statute.

90. For attorney fees and costs as permitted by law.

91. For such other relief and judgment as is just and equitable in the premises.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

RESPECTFULLY SUBMITTED this 30th day of March 2009.

AARON S. BARTHOLOMEW
NEIL SKOUSEN
Counsel for Plaintiff

16

# Exhibit A

On the day of April 24th I was at work at the Red Box getting a movie. When I saw Kandi coming out of the restroom as soon as she walked by the mens room Florencio Aldina came out and wrapped his arms around Kandi and started to call her mia more (My Love) Kandi then started to tell him no and to stop. He then let go and grab her by the left arm and started to pull her to the mens room she pulled away and told him to stop it she then walked around the conter and told the manger Later that night that Same manger tell me after Kandi needs to let it go. This is not the frist time we have had this happen. We have sixteen to seventeen years old girls working here what if this happen to one of them.

Jeff Talbot

931-0881 or
878-9160

# Exhibit B

EMPLOYEE ACTION FORM

EMPLOYEE NAME: FLORENCIO ALDINO

P ( OF )   ID: 251   DATE (MMDDY): 042508   07/02/08  10:01  STORE  2933

--------- COMMENDATION --------- REPRIMAND/DISCIPLINE ---------

| CD | DESCRIPTION | | CD | DESCRIPTION |
| | | | | INTERFERENCE WITH EMPLOYEES |

EXPLANATION:
ON APRIL 24TH KANDI R. INFORMED ME THAT SHE WAS BEING SEXUALLY HERRASSED BY
FLORENCIO.  IN A DURING OUR PHONE CONVERSATION I ASKED HER IF SHE WANTED ME TO
FIRE HER HIM,  SHE SAID NO HE NEEDS TO BE TALKED TO.  WELL I TALKED TO HIM ON
THE 25TH OF APRIL HE SEEMED REMORSEFULL BUT DID NOT ADMIT GUILT AND PROMISED
ME HE WOULD NEVER DO ANYTHING LIKE THAT AGAIN.  I MADE HIM AWARE THAT IF I HAD
ANY OTHER PROBLEMS WHITH HIM AGAIN HE WOULD BE TERMINATED ON THE SPOT, HE
UNDERSTOOD OUR CONVERSATION. I THEN CONTACTED HER BACK AND EXPLAINED HIS AND

HELP = <CTRL>+<F1>        F8 = CHOICES

Remarks to ₤ for Eachother She Seemed Satisfied. ₤ I Toll her that
I would get Involved ₤ that If she had Any other Problems With him
To Contact me immediatly.  She promised Me she would do so.
I then Contacted Trever for the Second time to let him know how Thru Conversations
Went with me  And that The Problem Seemed to Be Solved ₤ Taken Care of.

By

Florencio

# Exhibit C

ON APRIL 24 TH KANDI R. COME TALK WITH ME ABOUT WHEN
SHE GO TO THE RESTROOMS FLORENCIO TOUCH HER BACK AND.
CB HER BACK. SHE SAY ME YOU NEED TALK TO HIM ABOUT THAT, I
PROMISE HER I REALLY WANT TO TALK TO HIM BECAUSE THATS
NO RIGHT NEXT DAY I HAVE A CONVERSATION WITH
FLORENCIO HE ADMIT TO DO BUT IN FRIENDLY PLAN.

I EXPLAIN TO HIM DON'T DO THAT AGAIN BECAUSE SHE FEEL BAD.
AND HE DON'T NEED TO TOUCH NO BODY ELSE.
HE UNDERSTOOD AND PROMISE ME DONT HAPPENED AGAIN.

SERGIO                    7/02/08

ISSUE 1-B



# Exhibit D

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Kandi Apple Revere | From: Phoenix District Office |
|---|---|
| 10323 S Peony Way (Bsmt) | 3300 North Central Ave |
| Sandy, UT 84094 | Suite 690 |
| | Phoenix, AZ 85012 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Cherrie Y. Martin, | |
| 35C-2008-00385 | State & Local Coordinator | (602) 640-5064 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Chester V. Bailey,
District Director

DEC 3 0 2008

(Date Mailed)

Enclosures(s)

cc: MCDONALDS
9346 S 700 E
Sandy, UT 84094

Enclosure with EEOC
Form 161-B (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*